1  John A. Cochran, WSBA #038909
   johnnycochran@comcast.net
2  The Cochran Law Firm
3  4400 NE 77th Avenue
   Vancouver, WA 98662
4  Phone: 360.721.4222
   **Of Attorneys for Plaintiff**

5

6                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
7                            AT SEATTLE

8  C. HUGH JONSON AND BONNIE L.        )  Case No. 12-CV-00552RSL
   JONSON, HUSBAND AND WIFE,           )  **SECOND AMENDED COMPLAINT FOR:**
9                                      )      1. **RESPA CLAIM**
                                       )      2. **TILA CLAIM**
10            Plaintiffs,              )      3. **IMPROPER CHAIN OF TITLE**
                                       )      4. **LACK OF STANDING**
11     v.                             )      5. **VIOLATION OF FDCPA**
                                       )      6. **IMPROPER TRANSFER**
12  FLAGSTAR BANK, FSB & MORTGAGE      )      7. **LACK OF STANDING**
   REGISTRATION SYSTEMS, INC.          )      8. **PREDATORY LENDING**
13  ("MERS")                           )      9. **UNFAIR AND DECEPTIVE ACTS AND**
                                       )         **PRACTICES (UDAP)**
14            Defendants.              )
                                       )
15  _____  )

16

17                       COMMON ALLEGATIONS

18       Plaintiffs have discovered new claims based on an updated securitization audit

19  incorporating recent law, holdings and evidence submitted by Defendants in their Motion to

20  Dismiss which necessitate the Plaintiffs filing a Second Amended Complaint to properly plead

21  the below Claims to the Court.

22                            I.   PARTIES

23                                 1.

24

25       Plaintiffs are residents of Skagit County, Washington.

26                                 2.

1 – **SECOND AMENDED COMPLAINT** VIOLATION OF TILA;
RESPA; IMPROPER CHAIN OF TITLE; IMPROPER TRANSFER;
UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP)

Defendant FLAGSTAR BANK, FSB (hereinafter "FLAGSTAR") is a foreign business entity headquartered at 5151 Corporate Drive, Troy, MI 48098 with a registered agent (Corporation Service Company) located at 520 Pike Street, Seattle, Washington 98101.

3.

Defendant Mortgage Registration Systems, Inc., (hereinafter "MERS") is a foreign business corporation headquartered at PO Box 2026 in the City of Flint, and State of Michigan.

## II.  JURISDICTION

4.

## II. FEDERAL QUESTION JURISDICTION

5.1

The United States District Court for the Western District of Washington at Seattle has original jurisdiction over this action under 12 U.S.C. 2601-2617 & 15 U.S.C. 1641, 18 U.S.C. 1621 & 15 U.S.C. 1692(e),  (federal question).  As explained below, the action presents questions of federal law under Real Estate Settlement Procedures Act and Amendment to Truth in Lending Act pursuant to the The Helping Families Save Their Homes Act of 2009, and violations of the Unfair and Unlawful Practices Act at 18 U.S.C. 1621  and the Unlawful Debt Collection Practices Act at 15 U.S.C. 1692(e); .

5.2.

Supplemental Jurisdiction.

This Court has supplemental jurisdiction over Plaintiffs' pendent state law claims pursuant to 28 U.S.C. § 1367.   This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

## II.  VENUE

6.

1   Venue for all claims lies in the Western District of Washington at Seattle since

2   Plaintiffs' claims arose from acts of the Defendants perpetrated therein or perpetrated on a

3   Western Washington resident through the telephone or mail system.

4   IV.  INTRODUCTION

5   7.

6

7   This Amendment is necessitated as a result of researching Defendants Motion to

8   Dismiss allegations and Exhibits and Plaintiff hiring a private investigator / auditor and

9   obtaining a new securitization loan audit several weeks ago to which the auditor has discovered

10   a number of irregularities related to improper transfer, including but not limited to failures to

11   give proper or timely disclosures, equity stripping scheme, MERS "Table-Funded" loan,

12   Government Sponsored Entity loan pledging issue, and possible "forgery" of Note that

13   Defendants submitted as an Exhibit to its Motion to Dismiss as discussed below.

14

15   8

16   Plaintiffs are the owners of certain real property commonly known as 6818 Gibralter Pl,

17   Anacortes, Washington 98221-8344, County of Skagit and specifically described as:  Lot 4,

18   "GIBRALTER HEIGHTS," as per plat recorded in Volume 10 of Plats, pages 52 and 53,

19   records of Skagit County, Washington, APN #: 4213-000-004-0001.

20   9.

21   Plaintiff and Defendant executed a Deed of Trust dated December 29, 2009 and

22   recorded on January 04, 2010, under Auditor's File No. 201001040075 between C. Hugh

23   Jonson and Bonnie L. Jonson, as Grantor to Joan H. Anderson, EVP on behalf of Flagstar

24   Bank, FSB, as Trustee, in favor of Mortgage Electronic Registration Systems, Inc., the

25   beneficial interest and Flagstar Bank, FSB as "Lender".  The Deed of Trust was assigned an 18-

26

3 – **SECOND AMENDED COMPLAINT** VIOLATION OF TILA; RESPA; IMPROPER CHAIN OF TITLE; IMPROPER TRANSFER; UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP)

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

1   digit MIN# 100052550284677431. Originated by MERS, the Mortgage Identification Number

2   (MIN) is a unique 18-digit number used to track a mortgage loan throughout its life, from

3   origination to securitization to pay off or foreclosure. The report on the MERS Registry,

4   attached as Exhibit 01, stated that Flagstar is the current servicer of the Mortgage, and the

5   MERS file is "inactive."

6                                              10.

7       A search of this MIN# also revealed the "Servicer" as Flagstar and the "Investor" as

8   Freddie Mac.  A check of the Freddie Mac website confirmed this information and stated that

9   Freddie Mac acquired the subject loan on January 13th, 2010 (See attached exhibit 02- Freddie

10  Mac Capture.)  This is roughly 2 years before MERS attempted to assign all interest in the

11  Deed of Trust to FLAGSTAR on November 23, 2011.  If the loan was indeed purchased by

12  Freddie Mac, it was securitized by this "Gov't Sponsored Entity" (GSE.) A search in

13  Bloomberg identified approximately 57 potential "Freddie Mac REMIC" trusts to which the

14  subject loan could have been pledged around the time of origination (See Bloomberg attached

15  as Exhibit 03.)

16                                             11.

17      As mentioned above, MERS executed an Assignment of Deed of Trust in which the

18  beneficial interest in the Deed of Trust was assigned to Flagstar Bank, FSB, under an

19  Assignment document dated November 09, 2011 and recorded on November 23, 2011 under

20  Auditor's File No. 201111230078 in the Records of Skagit County, attached as Exhibit 04.

21  This document is executed by "Sharon Morgan" - Vice President of MERS. Morgan was

22  actually the "Assistant Vice President - Assistant Manager for Foreclosure" for Flagstar Bank at

23  the time of the assignment (See attached Exhibit 05 - Certification of Sharon Morgan.)  The

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

assignment is unusual by the fact that Flagstar's employee is attempting to assign the note and DOT back to itself.  Especially considering if Freddie Mac acquired the loan in January of 2010, then why is Flagstar executing the assignment in 2011?   This would violate new TILA amendment under The Helping Families Save Their Homes Act of 2009 as the new owner/assignee must notify the borrower within 30 days after the loan is sold and Plaintiffs allege they never received any said notice.

12.

   When Plaintiff originally applied for the loan mentioned herein in the amount of $403,080, the Defendant Flagstar Bank's agent promised that Plaintiff was to receive an interest rate between 3 and 4% in order to obtain a 30 year fixed loan with a monthly payment of $1700 to $1800 a month.  Upon signing for the initial loan to purchase this property in early 2008, Plaintiff was surprised after receiving his monthly mortgage statement that his monthly payment was approx. $3,200.80 a month.

13.

   Plaintiff did not understand what he was signing at closing and did not completely understand the rate, monthly, APR, whether the payments on the closing documents were principal or interest or included taxes and interest and do not specifically remember seeing the payment on the closing documents that Plaintiff saw on his payment mortgage coupon book a month later.  All Plaintiff remembers are the promises and representations of Defendant's loan representative that Plaintiff would receive a monthly payment in the range of $1700 to $1800 a month.  At that point, to rescind the loan, Plaintiff was worried about sacrificing the original earnest money and lose the ability to keep the Property.

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

14.

The loan itself has predatory characteristics. The borrowers were on a fixed income and the debt-to-income ratio for the loan itself exceeded 50%.  The appraised value of the property according to the 1003 residential loan application has an unusual odd number of $467,405.00. This type of odd value appears as though the numbers where being manipulated to make the borrower qualify. There is also a possibility that the borrowers were being targeted in an equity stripping scheme. Though it appears that Flagstar was trying to help the borrowers by decreasing their interest rate, it may have been done to cover up their prior predatory actions. This may somehow be construed as one event beginning when the Jonson's first came into contact with Flagstar.  The potential fraud in the prior loan lead to their eventual demise.

15.

The Plaintiff is a disabled war veteran and only received a fixed income which he told and conveyed said financial information to Defendant.  Defendant is in a far better position to advise and qualify Plaintiff as to his ability to repay the loan.  In this instance Defendant and Defendant's agents made assertions and statements regarding a promised monthly payment for this loan transaction both as part of obtaining the original loan as well as the refinance of that original loan.   Therefore, it is the position of the Plaintiff that Defendant intentionally concealed material information and all of the negative implications of the loan they were offering, and as a result, Plaintiffs face the potential of losing their home to the very entity and entities who placed Plaintiff in this position.

16.

The Plaintiff was a disabled Veteran who was receiving fixed payments from the Veteran's Administration and Defendant qualified Plaintiff for this loan supposedly based on Plaintiff's fixed

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

monthly income. The Plaintiff believes and alleges that the income used on the application was incorrect though.  The income used on the application to qualify Plaintiff for the loan secured by the above Deed of Trust and Note resulted in an actual debt to income ratio of 51.33% which greatly exceeds normal underwriting practices.  There was no determination of the ability of the Plaintiff to repay the loan and misrepresented the costs of the loan and the payment that Plaintiff would receive if Plaintiff used Defendant to fund this loan and to refinance it.  Plaintiff did not understand all of the paperwork with regards to the final interest rate and if the payment listed on the closing documents was the real or true payment or if it included taxes and insurance or if the payment on the statements would appear lower.  Defendant, neither explained the workings of the entire mortgage loan transaction, amortization of the loan, the annual percentage rate, points charged, the actual payment per month or the true cost of the finance charges.

17.

It does not appear that the borrower's debt ratios were taken into consideration. Failure to do so was a lack of due diligence on the part of the lender regarding underwriting standards and the ability to repay the loan, suggestive that they knew the income was not adequate to approve the loan, had the lender considered debt ratio, the lender would have had to decline the loan (this could be considered breach of the lender's contractual duty to conduct the transaction in good faith and through fair dealing; gross negligence as discussed and alleged below.  All of these factors make this loan predatory and unconscionable.

18.

The purpose of entering into the above-described mortgage loan transactions was for Plaintiffs to eventually own the Property and engage in a scheme of equity stripping.  That

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

1   purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants'

2   actions alleged herein.

3                                                        19.

4        Once again, Defendant, Flagstar Bank promised Plaintiff that his payment would be

5   reduced to $1700 a month and as a result Plaintiff applied for this refinance transaction that

6   occurred in December of 2009 to obtain the reduced payment.  Instead Defendant only reduced

7   the monthly payment to 2384.37.  This is a difference of $684.37 a month and since this was

8   the payment since January of 2010, this is a detrimental loss or overpayment that has affected

9   Plaintiff, not including late fees, extra interest on the late amounts and Attorney Fees being

10  added to the new loan balance and the default amount that is required to reinstate this loan as a

11  result of Plaintiff's eventual and foreseeable default in this case and loss of credit.

12                                                       20.

13       Plaintiff has relied on Defendant's promises to its detriment and Defendant has placed

14  Plaintiff in harm's way as a result of certain misrepresentations and Plaintiff's reliance on said

15  statements to its detriment.

16                                                       21.

17       Defendant Flagstar Bank, FSB executed an Appointment of Successor Trustee in

18  naming Northwest Trustee Services as Successor Trustee.

19                                                       22.

20       Pursuant to the Notice of Sale dated November 30, 2011, Defendant Flagstar Bank by

21  and through their agent Northwest Trustee Service acting as Successor Trustee caused said

22  notice to be recorded on December 08, 2011 at Auditor's number 201112080056.

23                                                       23.

8 – **SECOND AMENDED COMPLAINT** VIOLATION OF TILA;
RESPA; IMPROPER CHAIN OF TITLE; IMPROPER TRANSFER;
UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP)

1    The Trustee's Notice of Sale fixed the Sale date as March 09, 2012.  That date has since

2    been postponed.

3                                          24.

4    On November 30, 2011, Flagstar Bank, FSB executed, a Trustee's Notice of Sale.  The

5    Trustee's Notice of Sale recites the following:  "in favor of Mortgage Registration Systems,

6    Inc. "MERS" as nominee for Flagstar Bank, FSB, its successors and assigns, as Beneficiary,

7    the beneficial interest in which was assigned by Mortgage Electronic Registration Systems, Inc.

8    "MERS" as nominee for Flagstar Bank, FSB, its successors and assigns to Flagstar Bank, FSB,

9    under an Assignment/Successive Assignments recorded under Auditor's File No.

10   201111230078."

11

12                                         25.

13   Flagstar submits a color copy of the subject Note, purporting it to be a copy of the

14   "original," as an exhibit to its motion for summary judgment.  A declaration by Dr. James

15   Kelley indicates that this Note is a forgery attached hereto as Exhibit 06.  Dr. Kelley examined

16   the questioned document that contains a purported color copy of the original Note with special

17   attention to page 54 that contains the questioned signatures of Bonnie Louise Jonson and

18   Clarence Hugh Jonson.  He compared said signature with original signatures from Mr. and Mrs.

19   Jonson.  He also extracted the file metadata that contains information about the creation and

20   modification of the document as well as the name of the document creator -"schaj".  Pertaining

21   to the alleged signatures of Clarence Hugh Jonson and Bonnie Louise Jonson on the Note

22   document attached to page 54 of the motion to dismiss, this Examiner's professional opinion is

23   that said document is not a copy made directly from the original Note; and the signatures

24

25

26

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

1    thereon were systematically fabricated to make them appear as direct copies of the "blue Ink"

2    signature of the original Note.  The examiners opinion is that the signatures are forgeries.

3                                                      26.

4            There is a "blank endorsement" on a separate page of Defense exhibit of the so-called

5    original note, attached as Exhibit 07.  If this was placed on the back page of the so-called

6    original note, it is suspicious. Endorsements are to be placed on the signature page of the note if

7    there is room. There appears to have been plenty of space to affix the endorsement on the

8    signature page.  This adds credence to the document being altered.  One of the signatures on the

9    endorsement on the Note is that of "John Marecki - Trust Vice President." This is a clue that the

10   subject loan may have been securitized internally by Flagstar in addition to Flagstar's selling

11   the loan to Freddie Mac.

12
                                                    27.
13
             If above allegations are indeed true, it is apparent that Defendants do not have the
14
     original Note and do not have proper authority to even have initiated this nonjudicial
15
     foreclosure process in the first place and in the second place, Defendants have committed
16
     perjury to this court and as a result ask the court to suspend this foreclosure action indefinitely
17
     until we can have a hearing on the note and the signatures affixed thereto and consider
18
     enjoining this foreclosure sale indefinitely and determining the claims relating to the
19
     authenticity of the Note attached to the motion to dismiss and determine if the Defendants have
20
     the original Note in their possession.  It appears that Defendants have intentionally and falsely
21
     claim to be the party entitled to monies due under terms of the Note.  That this manufactured
22
     document is a fabrication intended to create the illusion of a valid transfer of the promissory
23
24   note and support the assertion of standing in this particular case.  It appears that this

25

26

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

1  manufactured evidence is being used in this case to deceive the court and save the cost to the

2  lender and obtain a motion to dismiss in this case with relative ease.

3                                    28.

4      Plaintiff thereafter initiated the instant case seeking Declaratory Judgment invalidating

5  the foregoing foreclosure sale. Plaintiff initiated the instant case seeking Declaratory Judgment

6  invalidating the foregoing foreclosure sale on the grounds that there was no recorded

7  assignment to any lawful and proper beneficiary prior to the initiation of the non-judicial

8  foreclosure as required by RCW 61.24.030 along with a number of other failures to comply

9  with the RCW 61.24.

10                                   29.

11

12     At all times material hereto, Defendants are claiming a right to foreclosure non-

13  judicially as a result of the power of sale clause contained in the DOT, which is a contractual

14  agreement.

15                                   30.

16     The DOT specifically conditions Defendants' exercise of the power of sale contained in

17  the DOT on Defendants' compliance with applicable law.  The DOT also specifically requires

18  that the Lender give notice to the Borrower of the right to file suit.  This notice was never filed.

19

20                                   31.

21     The power of sale is a contractual remedy, the exercise of which is limited and

22  conditioned by statute.

23                                   32.

24     Defendants' actions in pursuing a non-judicial foreclosure wrongfully invokes the

25  power of sale because Defendants have failed to comply with the preconditions necessary to

26

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

1  invoke the power of sale,

2                                          33.

3       Defendants' failure to abide by the non-judicial foreclosure statutes constitutes a breach

4  of contract because Defendants have sought a remedy under the DOT to which they are not

5  entitled because Defendants have sought to non-judicially foreclose without meeting the

6  requirements set forth in RCW 61.24.

7                                          34.

8       As the DOT specifically provides for attorney fees, in the event that Defendants prevail

9  upon the exercise of the power of sale, Plaintiff is also entitled to its attorney fees in the event

10 Defendants' exercise of the power of sale is deemed wrongful.

11

12

13                                         35.

14      As Defendants' remedy is based purely on a contract, and as the contract at issue

15 specifically provides that attorney fees and costs incurred to enforce the provisions of the

16 contract, Plaintiff is entitled to an award of its fees if it prevails in voiding, invalidating, or

17 setting aside the remedy chosen by Defendants – specifically, Defendants' election to invoke

18 the power of sale contained in the DOT.  In the event Defendants' invocation of the power of

19 sale is deemed wrongful, Plaintiff's claim clearly falls within Section 26 of the Deed of Trust

20 because Defendants' claim of the right to foreclose non-judicially arises purely based on a

21 contract that specifically provides for an award of attorney fees.

22

23                          FIRST CLAIM FOR RELIEF
24        DECLARATORY JUDGMENT - INVALIDATING FORECLOSURE SALE
                            IMPROPER CHAIN OF TITLE

25                                         36.

26      Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

fully set forth herein.

37.

While the Deed of Trust lists MERS as the Beneficiary in Section E of the Definitions, the Deed of Trust is equally clear that Flagstar Bank, FSB is the Lender.

38.

Flagstar is the party who loaned the money, FLAGSTAR is the party to whom the obligation is owed and FLAGSTAR is the party for whose benefit the Deed of Trust was given.

39.

The "Freddie Mac Capture" attached as Exhibit 02 shows the subject loan was acquired by Freddie Mac on January 13, 2010.  There has been one assignment of the DOT recorded in the county land records (attached) whereby MERS attempts to assign the Note and DOT back to Flagstar Bank, FSB on January 09, 2011. This document is executed by "Sharon Morgan" - Vice President of MERS. Morgan was actually the "Assistant Vice President - Assistant Manager for Foreclosure" for Flagstar Bank at the time of the assignment (See attached Exhibit 05 - Certification of Sharon Morgan.)

40.

The assignment is unusual by the fact that Flagstar's employee is attempting to assign the note and DOT back to itself. Most importantly, if Freddie Mac acquired the loan in January of 2010, then why is Flagstar executing the assignment in 2011?

41.

If the loan was indeed purchased by Freddie Mac, it was securitized by this "Gov't Sponsored Entity" (GSE). A search in Bloomberg identified approximately 57 potential "Freddie Mac REMIC" trusts to which the subject loan could have been pledged around the time of origination (Bloomberg attached as Exhibit 03.)

42.

As set forth above, FLAGSTAR'S first recorded interest in the property is set forth in

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

the Assignment of Deed of Trust dated November 09, 2011, nearly Two (2) years after the date of the original Deed of Trust.

43.

There are no recorded transfers between the initial Deed of Trust dated December 29, 2009 and the subsequent assignment in November of 2011.

44.

MERS is a system which facilitates the rapid transfer of unrecorded assignments of Obligations and Trust Deeds between MERS members.  Said assignments regularly occur without any recordation in the County in which the property is situated.  MERS systematic failure to record assignments between MERS members is in fact, a feature of the system, not a bug.

45.

MERS has never had any beneficial interest in the Deed of Trust.

46.

FLAGSTAR has the only recorded interest in the property, yet its interest was not recorded until nearly Two (2) years after the original Deed of Trust.

47.

There is a gap of nearly Two (2) years in the Chain of Title during which the Deed of Trust was in the sole possession and title of MERS but unbeknownst to Plaintiff it appears that MERS saw the need to execute an Assignment of Deed of Trust transferring the recorded beneficial interest to FLAGSTAR as late as November of 2011.

48.

A trustee may conduct a non-judicial foreclosure only if the Trust Deed and any assignments thereof have been recorded in the deed records of the county in which the property sits.

49.

There exists a justiciable controversy between Plaintiff and Defendants as to whether

14 – **SECOND AMENDED COMPLAINT** VIOLATION OF TILA; RESPA; IMPROPER CHAIN OF TITLE; IMPROPER TRANSFER; UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP)

1   Defendant violated RCW 61.24.030 by conducting a non-judicial foreclosure and failing to

2   record all of the assignments of the Deed of Trust.

3                                           50.

4           The evidence of Defendants' failures to properly record all assignments is also strongly

5   indicated by the Assignment of Deed of Trust by which FLAGSTAR purported to obtain the

6   right to foreclose after the loan was sold to Freddie Mac.  Additionally, there is a "blank

7   endorsement" on a separate page of Defense exhibit of the so-called original note, attached as

8   Exhibit 07.  One of the signatures on the endorsement on the Note is that of "John Marecki -

9   Trust Vice President." This is a clue that the subject loan may have been securitized internally

10  by Flagstar in addition to Flagstar's selling the loan to Freddie Mac.

11                                          51.

12          Defendants' failure to properly record all assignments of the Deed of Trust violates

13  RCW 61.24.030 and should result in Declaratory Judgment voiding and invalidating any

14  trustee's sale of this Property and forcing Defendants' to immediately dismiss the current

15  nonjudicial foreclosure action being contested in this case.

### V.  PLAINTIFF'S SECOND CLAIM FOR RELIEF
### RESPA VIOLATION 12 U.S.C. 2601-2617, 24 C.F.R. § 3500.21(d)(ii)(2)(A)

18                                          52.

19          Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

20  fully set forth herein.

21                                          53.

22          There is one assignment of the DOT, executed on November 09, 2011, recorded in the

23  Skagit County land records under Auditor's File No. 201111230078. This Assignment transfers

24  theinterest in the real property from MERS, as beneficiary to Flagstar Bank, FSB.  Plaintiff

25  alleges they never received notice of said transfer.

---

15 – **SECOND AMENDED COMPLAINT** VIOLATION OF TILA;
RESPA; IMPROPER CHAIN OF TITLE; IMPROPER TRANSFER;
UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP)

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

54.

Additionally, Freddie Mac acquired the loan on "January 13ᵗʰ, 2010" according to the attached Exhibit 02 - "Freddie Mac Capture."  It is not clear how MERS could transfer title as beneficiary to OneWest Bank, F.S.B. if Freddie Mac was the owner and why would MERS receive value and not Freddie Mac.

55.

Defendants have engaged in the following acts which constitute violations of the Real Estate Settlement Procedures Act:

A. Failure to inform Borrower of intention to transfer the servicing of the loan and the actual transfer within fifteen (15) days before the effective date of the transfer.

B. Failure to disclose all affiliated business arrangements.

56.

As a direct result of Defendant FLAGSTAR's actions in connection with the loan, Plaintiff has been damaged in an amount to be proven at trial, but not less than $10,000.00 plus statutory fees.

57.

Plaintiff should be awarded its reasonable attorney fees incurred in bringing this claim and defending against the foreclosure.

PLAINTIFF'S THIRD CLAIM FOR RELIEF
TILA 15 U.S.C. 1641, Section 404

58.

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

59.

16 – **SECOND AMENDED COMPLAINT** VIOLATION OF TILA;
RESPA; IMPROPER CHAIN OF TITLE; IMPROPER TRANSFER;
UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP)

The Helping Families Save Their Homes Act of 2009 included a new provision in TILA which requires that whenever ownership of a mortgage loan securing a consumer's principal dwelling is transferred, the creditor that is the new owner or assignee must notify the borrower in writing, within 30 days after the loan is sold or assigned, of the following information:

(a)  the new creditor's identity, address, and telephone number;

(b)  the date of transfer;

(c)  location where the transfer is recorded;

(d)  how the borrower may reach an agent or party with authority to act on behalf of the new creditor; and

(e)  any other relevant information regarding the new owner.

60.

The new law applies to any transfers made after the Act's effective date, which was May 20, 2009. The assignment of in this case occurred in November of 2011.  Plaintiff alleges He never received any such notification that the ownership of their loan was transferred.

61.

The TILA penalty an amount "equal to twice the amount of the finance charge imposed, but not less than $100 nor more than $1,000 [15 U.S.C. Section 1640(2)(a)].  Additionally, the borrower should be able to recover attorney's fee under TILA, if the borrower prevails on his or her TILA claim.

62.

Plaintiff should be awarded its reasonable attorney fees incurred in bringing this TILA claim.

PLAINTIFF'S FOURTH CLAIM FOR RELIEF

17 – **SECOND AMENDED COMPLAINT** VIOLATION OF TILA;
RESPA; IMPROPER CHAIN OF TITLE; IMPROPER TRANSFER;
UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP)

UNFAIR AND UNLAWFUL PRACTICES ACT
VIOLATIONS OF 18 U.S.C. 1621

63.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

64.

Under 18 U.S.C. 1621

Whoever-

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

That Defendants, through its agent, filed a declaration under penalty of perjury in the U.S. Federal District Court representing that this promissory note was an original and therefore it was  entitled to enforce the terms of said promissory note in order to induce the court rule in its favor on its motion to dismiss pleading and incorporated said Note on page 11 of its motion to dismiss and attached said Note as Exhibit D. This pleading was signed by Attorney Fred Burnside as agent and counsel for Defendants Flagstar Bank, FSB and Mortgage Electronic Registration Systems.

65.

That the" Assignment of Deed of Trust" filed with the King County County Recorder's

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

Office on January 04, 2010, purports to represent that a transfer of the Promissory Note occurred from MERS to Flagstar on January 04, 2010.  This does not appear possible.

That the originally signed Promissory Note  is a fabricated document used by Defendants in this motion to dismiss hearing, so as to create the illusion that Flagstar holds the original promissory note and therefore is entitled to enforce the terms of said Note.

66.

A declaration by Dr. James Kelley indicates that this Note is a forgery attached hereto as Exhibit 05.  Dr. Kelley examined the questioned document that contains a purported color copy of the original Note with special attention to page 54 that contains the questioned signatures of Bonnie Louise Jonson and Clarence Hugh Jonson.  He compared said signature with original signatures from Mr. and Mrs. Jonson.  He also extracted the file metadata that contains information about the creation and modification of the document as well as the name of the document creator -"schaj".  Pertaining to the alleged signatures of Clarence Hugh Jonson and Bonnie Louise Jonson on the Note document attached to page 54 of the motion to dismiss, this Examiner's professional opinion is that said document is not a copy made directly from the original Note; and the signatures thereon were systematically fabricated to make them appear as direct copies of the "blue Ink" signature of the original Note.  The examiners opinion is that the signatures are forgeries.

67.

Therefore, this Note that Defendants proffered to the Court as an original is actually a forgery and as such should be held against Defendants so as to prove that if Defendants would go to such an extent to produce a forged document in the court record then said original document simply does not exist.  If this is the case, Defendants cannot move forward with said

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

nonjudicial foreclosure and must dismiss this case.

68.

Submitting a forged promissory note along with a motion to dismiss is a prime example of the deceptive business practice being utilized by Lenders in these type of cases and Defendants should be penalized for engaging in such conduct.

69.

That Defendant's business practice creates TWO distinctly false representations of the historical "chain of title" of the Deed of Trust, neither of which is consistent with the Pooling and Servicing Agreement.  We cannot even be sure who is the actual legal owner of said Note, when said Note is supposed to follow the Deed of Trust.

70.

That was false and inaccurate and manufactured for the purpose of deceiving this District Court into accepting Defendants version of the chain of title transfers without regard to the truth as well as the current owner of said Note.

A debt collector violates *15* USC 1692f  by

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if:

> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> (B) there is no present intention to take possession of the property; or
> (C) the property is exempt by law from such dispossession or disablement.

As stated above, Defendants, individually and through its authorized representatives, has caused a false and fabricated promissory note along with its motion to dismiss made under penalty of perjury to be filed with this United States District Court for the Western District of Washington at Seattle.

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

PLAINTIFF'S FIFTH CLAIM FOR RELIEF
False/Misleading Representations - Unlawful Debt Collection Practices Act
VIOLATIONS OF 15 U.S.C. 1692(e)

71.

15 U.S.C 1692e. False or misleading representations states the following:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(l) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of-

(A) the character, amount, or legal status of any debt; or

(B) any services rendered of compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4} The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The 'threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to-

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer

72.

That Defendants conduct rises to the level of "un lawful" under the perjury statute.

73.

That Defendants conduct in this case rises to the level of "fraudulent" under the plain definition of the word and is highly likely to mislead the public including this

court.

### 74.

That Defendants have presented evidence and assertions as to the chain of title transfers of said promissory note in this District Court matter, that Defendants either knows to be false or where Defendants have no reason to believe that these assertions contained in these documents are true.

### 75.

The Defendants have engaged in this deceptive business practice for its own financial benefit at the expense of Plaintiffs legal position, its own investors, competitors and with complete disdain for the Federal District Court system.

### 76.

Rather than satisfy its burden of proof to establish standing, Defendants have determined that manufacturing evidence to accomplish its goals and chill opposition is a more cost effective business practice.

### 77.

As stated, the process of proving up standing for a Mortgage Backed /Government Sponsored Security Trust typically involves proving three true sales of a given promissory note (From Originator to Sponsor to Depositor to the Trust).  Defendants utilize this deceptive business practice to avoid the costs associated with this proving standing.

### 78.

To Defendants, the ends justify the means: Whether there is a lack of ANY evidence of a Government Sponsored Trust standing OR where Defendants view the cost of proving up THREE promissory note transfers is too high.  Defendants

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

efficiently avoid the challenge by utilizing the business practice of manufacturing evidence.

79.

This use of the fabricated evidence has a chilling effect on borrowers and their attorneys. Said business practice discourages Plaintiff counsel from bringing other good faith arguments based on the transfer of the Deed of Trust and valid securitization claims or from questioning the validity of Defendants false claims based on standing,

80.

That the fabricated loan documents and possibly other documents used by Defendants, while persuasive, are blatant misrepresentations of the true chain of title transfer of Plaintiff's promissory note  and affront to the integrity of the legal system.

81.

Plaintiffs are further informed and believe and allege thereon that each of these defendants' business practices are likely to continue to deceive the public and are likely to continue to induce the Courts including other Plaintiffs and Plaintiffs counsel into relying to their detriment on false representations made in loan and title documents and affidavits offered in similar District Court matters.

82.

Defendants' fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, said Defendants have violated Revised Code of Washington 19.86.093 by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiff of their home, equity, as well as their past and future investment as indicated above.

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

83.

As a proximate result of defendants' conduct, plaintiffs, each of them, was injured financially and/or to her property rights. Said conduct as set forth herein resulted in statutory, general and special damages. Plaintiffs are further entitled to injunctive relief and any other equitable relief that the court deems appropriate.

PLAINTIFF'S SIXTH CLAIM FOR RELIEF
PROMISSORY ESTOPPEL & DETRIMENTAL RELIANCE

84.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

85.

Defendant Flagstar Bank promised Plaintiff that Plaintiff would receive an interest rate of approximately 3% on a loan with a $1700 a month payment and Defendant Flagstar Bank repeatedly promised a given rate and a given payment for this loan in the amount of $403,080. Said promises were in consideration for Plaintiff's submission of documentation and Plaintiff's agreement to make future payments at said promised rate and promised amount. Otherwise Plaintiff would not have used Defendant to fund this particular loan.

86.

In addition, Plaintiff alleges that FLAGSTAR promised him that he could refinance and get a much more affordable loan based on the promises set forth above. In addition, FLAGSTAR promised Plaintiff that if Plaintiff submitted certain information to Defendants that Defendants would review Plaintiff's refinance paperwork and put Plaintiff in a better loan because of the high interest rate and loan payment situation. Mr. Anderson promised to Plaintiff that if Plaintiff refinanced with Defendant, that Defendant would be able to obtain him

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

a loan with a monthly payment of $1700, no questions asked.  Said promises were in

consideration for Plaintiff's submission of documentation and Plaintiff's agreement to pay

more closing/title costs and more finance and interest fees to Defendant for the refinance based

on their promises to obtain a loan with a given rate and monthly payment for Plaintiff.  Plaintiff

is not a professional loan consultant or broker or title officer. Plaintiff simply did not fully

understand the nature of all the documentation at closing for the original or refinance loan and

was shocked both times after closing of both loan transactions.  Plaintiff was shocked because

despite all the promises that Defendant made to Plaintiff regarding a given rate and a given

monthly payment, the actual payment amount that was delivered to him after closing was

nowhere close to the $1700 amount that was originally promised to Plaintiff.  Defendant

instead put Plaintiff in a harmful situation whereby Plaintiff had no choice but to accept the

harmful loan terms.

87.

Plaintiff relied on Defendant Flagstar Bank's promises set forth herein.  If Plaintiff had

known that Defendant was going to put him in a loan with a monthly payment of 3200.80 a

month, Plaintiff would never agreed to pay fees, costs and undertake a loan at that monthly

payment and at that interest rate.  After Plaintiff spent months and months complaining and

explaining the issue and mistake to Defendant, Plaintiff believed this time that Mr. Anderson

and Flagstar Bank would fix the issue/mistake and put him into the loan he originally thought

he was getting from Defendant.  Once again, Plaintiff paid fees, costs and extra interest to

obtain a refinance of the original loan from Defendant and once again it did not come down

anywhere close to the agreed upon new monthly payment.  At that point, Plaintiff had already

The Cochran Law Firm LLC
4400 NE 77th Ave., Ste. 275
Vancouver, WA 98662
Telephone (360) 721-4222 – Fax (360) 953-8083

1   paid fees, closing costs and used his resources for the refinance and was thus impeded from

2   finding another lender after the refinance to obtain another loan.

88.

3

4   Plaintiff was reasonable in relying on Defendant Flagstar Bank's promises set forth

5   herein because as the holder of the mortgage on the subject property, Defendant Flagstar Bank

6   is in an absolute position to oversee and control all such matters.  Flagstar has an understanding

7   of what will be submitted to title and what will be the ultimate payment.  In this case, Plaintiff

8   had no idea that the payment was going to be that high, not at either of the closings.  Plaintiff

9   relied to his detriment on the statements of the Defendant that his payment would be around

10  $1700 after the funding of both of these loan transactions.

11

89.

12

13  Defendant Flagstar Bank did not perform as promised and has damaged Plaintiff by

14  forcing the sale of the home, unlawfully and improperly representing the payment that Plaintiff

15  was supposed to obtain after both closings of aforesaid loan transactions.  Plaintiff allegedly

16  did not have certain extra income or credit, when Plaintiff is a disabled veteran with a fixed

17  income so the income and credit would never had changed and there should never had been

18  such a wide discrepancy between the payment that Defendant promised to Plaintiff and the

19  payment that Plaintiff actually received after the funding of these loan transactions.

20

90.

21

22  Plaintiff reasonably relied on multiple promises made by Defendant Flagstar Bank and

23  has been substantially damaged by Defendant Flagstar Bank in that Defendant is currently

24  foreclosing on the subject property on July 06, 2012, as a result of Plaintiff's reliance on

25  Defendant's promise to obtain a certain monthly payment and interest rate for Plaintiff and

26

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

instead supplying Plaintiff with a payment that Plaintiff could not afford.  The difference between the original loan amount of $3200.80 and the promised payment of $1700 is $1500.80 a month overpayment and he paid this for a year for loss of $18,009.60 and then the overpayment on the second part of the loan is $1134.73 a month since January of 2010, for 30 months for a loss of $34,041.90.  The Plaintiff has overpaid as a result of the reliance on Defendants' statements roughly $52,051.50.  Additionally, Plaintiff was denied the opportunity to preserve his credit, reinstate the loan because of the large loan fees, late fees, attorney fees and interest that are presently accumulating under the amortization schedule of this loan.

## VI.  PLAINTIFF'S SEVENTH CLAIM FOR RELIEF
## LACK OF STANDING

91.

Plaintiff re-alleges and incorporates by reference all proceeding paragraphs fully set forth herein.

92.

An actual controversy has arisen and now exists between Defendants and Plaintiffs regarding their respective rights and duties, in that Plaintiffs contend that Defendants do not have the right to foreclose on the home because defendants have failed to perfect any valid security interest in the home.  Thus, the reported power of sale by the Defendants no longer applies.  Plaintiffs further contend the defendants and each of them, do not have the right to foreclose on the home because said Defendants did not properly comply with the terms with the Defendants own transfer, endorsement and securitization requirements and falsely or fraudulently prepared documents required for defendants to foreclose as a calculated and fraudulent business practice.

27 – **SECOND AMENDED COMPLAINT** VIOLATION OF TILA; RESPA; IMPROPER CHAIN OF TITLE; IMPROPER TRANSFER; UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP)

93.

Plaintiffs are informed and believed that and there upon allege that the only individual who has standing to foreclose is the holder of the note because only the holder has a beneficial interest.

94.

Plaintiffs requests that this court find that the reported power of sale contained in the note and deed of trust has no force and effect at this time, because defendants actions in processing, handling and attempting foreclosure of this loan involve numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of state and federal laws designed to protect borrowers, which has directly caused plaintiffs to be at an equitable disadvantage to the defendants.  Plaintiffs further request that the title to their home remain in their name and said deed of trust remaining in beneficiary's name, during the pendency of this litigation and deem that any attempted sale of the home is unlawful and void.

WHEREFORE, Plaintiff prays for relief as set forth below.

PLAINITFF'S EIGHTH CLAIM FOR RELIEF
CONTRACTUAL BREACH OF COVENANT OF GOOD FAITH & FAIR DEALING

95.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

96.

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

97.

The terms of the Loan imposed upon FLAGSTARs a duty of good faith and fair dealing in this matter.

98.

The loan itself has predatory characteristics. The borrowers were on a fixed income and the debt-to-income ratio for the loan itself exceeded 50%. The appraised value of the property according to the 1003 residential loan application has an unusual odd number of $467,405.00. This type of odd value appears as though the numbers where being manipulated to make the borrower qualify. There is also a possibility that the borrowers were being targeted in an equity stripping scheme. Though it appears that Flagstar was trying to help the borrowers by decreasing their interest rate, it may have been done to cover up their prior predatory actions. This may somehow be construed as one event beginning when the Jonson's first came into contact with Flagstar. The potential fraud in the prior loan lead to their eventual demise.

99.

Flagstar did not take into consideration the Plaintiff's actual ability to repay this loan using a Realistic Means Test or other reasonable and prudent indicator or objective standard. In addition, Defendant did not explain the material terms of the contract to Plaintiff and misrepresented material terms and after the fact once again misrepresented material facts to Plaintiff in order for Plaintiff to be deceived into accepting unconscionable terms of said contract, the high monthly payment. It does not appear that the borrower's debt ratios were taken into consideration. Failure to do so was

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

also a lack of due diligence on the part of Flagstar regarding underwriting standards and the ability to repay the loan, suggestive that they knew the income was not adequate to approve the loan, had the lender considered debt ratio, the lender would have had to decline the loan as this is a breach of the lender's contractual duty to conduct the transaction in good faith and through fair dealing.

100.

FLAGSTARs enjoyed substantial discretionary power affecting the rights of Plaintiff during the events alleged in this Complaint. FLAGSTARs were required to exercise such power in good faith.  Defendant then changed the contract and misrepresented terms to the Plaintiff in order to once again charge more fees and not give to Plaintiff the benefit of the bargain of the $1700 a month payment that Plaintiff based its decision to enter into this loan transaction with Defendant  and under which terms were the only terms in which Plaintiff wished to perform under with Defendant per the new contract terms.  These were not the terms Plaintiff thought they were negotiating for under the original loan nor under the refinance loan transaction.

101.

FLAGSTARs willfully breached their implied covenant of good faith and fair dealing with Plaintiff when FLAGSTAR:

I. Willfully withheld numerous disclosures;

II. Willfully withheld the potential increase in payment and repeatedly promised the payment should be around $1700 with an interest rate between 3% and 4%;

III. Willfully placed Plaintiffs in a loan that they did not qualify for, could not afford, and subjected them to further financial detriment, while providing FLAGSTAR with financial benefits they would not have otherwise enjoyed.

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

102.

As a result of FLAGSTAR's breach of this covenant, Plaintiffs have suffered

injury in overpayments of $52,051.50 and has caused Plaintiffs the threat of loss of their home

and loss of credit.  Plaintiffs have incurred and ontinue to incur legal fees, including attorney

fees and costs, as well as expenses to right this wrong.

103.

FLAGSTAR's actions in this matter have been willful, knowing, malicious,

fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to

punish FLAGSTAR and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiff prays for relief as set forth below.

PLAINTIFF'S NINTH CLAIM FOR RELIEF
PREDATORY LENDING

104.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

105.

Upon review of the closing documentation accompanying the execution of the

Promissory Note and Deed of Trust, Plaintiff has identified the following predatory lending

violations.

106.

Defendant OWNIT has engaged in the following acts which constitute predatory

lending practices and violations of the Unfair Trade Practices Act:

A.  LTV ratio exceeded 80%

B.  DTI ratio exceeded 60%, far in excess of the 28%/36% provided for in interagency
    guidelines.

C.  Interest rate exceeded more than 2 points above margin.

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

D.  Deceptive and fraudulent practices throughout the duration of the transaction in

E.  violation of the Unfair Trade Practices Act.

107.

As a direct result of Defendant s actions in connection with the loan, Plaintiff

has been damaged in an amount to be proven at trial, but not less than $15,000.00 plus statutory

fees.

VII. PLAINTIFF'S TENTH CLAIM FOR RELIEF
IMPROPER TRANSFER

108.

Plaintiff re-alleges and incorporates by reference all proceeding paragraphs fully set

forth herein.

109.

When plaintiff s note and deed of trust were created defendant MERS was named as the

"beneficiary" in the deed of trust. Plaintiffs are informed and believe that they are on a ledge,

that defendant MERS lacks authority under its corporate charter to foreclose a mortgage, or to

own or transfer an interest in this particular mortgage because MERS charter limits MERS

powers and duties to functioning as an electronic registration system for certain types of

securities.  This loan appears to have been sold to Freddie Mac on January 13, 2010.

110.

The assignment doesn't occur until nearly two years later or late November of 2011.  A

search of this MIN# revealed the "Servicer" as Flagstar and the "Investor" as Freddie Mac.

This is evidence that the loan was on the books of Freddie Mac even after the purported

assignment to Flagstar who is now acting as the "Servicer".  Moreover, if the loan was

indeed purchased by Freddie Mac, it was securitized by this "Gov't Sponsored Entity" (GSE.) A

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

search in Bloomberg identified approximately 57 potential "Freddie Mac REMIC" trusts to which the subject loan could have been pledged around the time of origination.

111.

If the loan was indeed purchased by Freddie Mac, it was securitized by this "Government Sponsored Entity" (GSE.) A search in Bloomberg identified approximately 57 potential "Freddie Mac REMIC" trusts to which the subject loan could have been pledged around the time of origination (Bloomberg Exhibit A), attached as Exhibit 03.

Each Freddie Mac trust has a "Pooling & Servicing Agreement" and Prospectus must be obtained in formal discovery.

112.

Plaintiffs are informed and believe, and their on a ledge, that in order to conduct a foreclosure action, a person or entity must have standing.

113.

The Note in this action identifies the entity to whom it was payable, the original lender, as Flagstar Bank, F.S.B.  Therefore, the Note herein cannot be transferred unless it is endorsed. There is a "blank endorsement" on a separate page of Defense exhibit. If this was placed on the back page of the so-called original note, it is suspicious. Endorsements are to be placed on the signature page of the note if there is room. There appears to have been plenty of space to affix the endorsement on the signature page. This adds credence to the document being altered.  The Note itself does not establish that that endorsement was made properly nor are there any other notices which establish that the original lender endorsed and sold the note to another party.

114.

33 – **SECOND AMENDED COMPLAINT** VIOLATION OF TILA;
RESPA; IMPROPER CHAIN OF TITLE; IMPROPER TRANSFER;
UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP)

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

1   Furthermore, in so far as the party to the securitization and transfer of the plaintiffs note

2   and deed of trust base their claim that the note was not transferred to Freddie Mac or Flagstar

3   properly as it is well established federal and state law that the assignment of a deed of trust

4   does not automatically assign the underlying promissory note and the right to be paid and the

5   security interest is incident to perfect the transfer of mortgage papers as collateral for a debt,

6   the owner should deliver the note to the transferee without transfer, the sale of the note is

7   invalid as a fraudulent conveyance, or as unperfected. The note herein specifically identifies the

8   party to whom it is payable, to it, Flagstar Bank, F.S.B. and the note, therefore, cannot be

9   transferred unless it is endorsed.  As mentioned above the Note appears to be a forgery and not

10  the original and the endorsements on Defendants attached Note exhibit are suspicious at best

11  and lead to the conclusion that Flagstar had possibly even placed this note in some sort of trust

12  furthering complicating the chain of title issue regarding this Deed of Trust and Note.

13                                                115.

14

15  Defendants, and each of them, cannot produce any evidence that the note has been

16  transferred; therefore, defendant MERS could only transfer whatever interest it had in the deed

17  of trust.  In addition there was no designated Trustee in the Deed of Trust either to transfer it as

18  well.  The promissory note and deed of trust are inseparable; an assignment of the note carries

19  the mortgage (i.e., deed of trust) with it, while an assignment of the deed of trust alone is a

20  nullity. Therefore, if one party receives a note and another party receives the deed of trust, as in

21  this case, the holder of the note prevails regardless of the order in which the interest was

22  transferred.

23                                                116.

24

25

26

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

Defendant MERS has failed to submit documents authorizing MERS, as beneficiary for the original lender, to assign the subject mortgage.  In the instant action, MERS, as a mere beneficiary for the original lender, not only lacks authority to assign the mortgage, but cannot demonstrate that the original mortgage holder had knowledge or ascent to the assignment by MERS of the original Promissory Note.  Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying note, is void.  Therefore, Defendant, MERS, cannot establish that it is entitled to assert a claim in this case. For that reason as well as other reason set forth below, MERS cannot transfer an interest in real property and cannot recover anything from the Plaintiffs.

117.

The Defendants and each of them through actions alleged above have illegally commenced foreclosure under the note on the home, supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause plaintiffs great harm and irreparable injury and that real property is unique.

118.

The wrongful conduct of the defendants, unless restrained or enjoined by an order of this court, will continue to cause great and irreparable harm to the plaintiffs. Plaintiffs will not have the beneficial use or enjoyment of their home and will lose their home.  Plaintiffs have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to the plaintiffs. Plaintiffs have suffered and will continue to suffer in the future unless defendant's wrongful conduct is restrained and enjoined because real property is inherently unique and will be impossible for the plaintiffs to determine the precise amount of damage they will suffer.

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

1

PLAINTIFF'S ELEVENTH CLAIM FOR RELIEF
UNFAIR AND DECEPTIVE BUSINESS ACT PRACTICES (UDAP)

2

3

119.

4

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

5

fully set forth herein.

6

120.

7

Flagstar does not have authority to initiate foreclosure against Plaintiff's Property under

8

said Trust Deed and Note.   It appears that Defendants violated State law and Federal law as a

9

result of the way in which Defendant's attempted to foreclose on said Note and Trust Deed.

10

Flagstar and Northwest Trustee Services, Inc. initiated a foreclosure action that it never had

11

proper authority to initiate.  Defendants have gone as far as to introduce a forged original

12

Promissory Note into evidence attached to its Motion to Dismiss as an Exhibit in order to

13

further perpetuate its goal of wrongfully foreclosing on Plaintiff in this action.

14

15

121.

16

By reason of Defendants fraudulent, deceptive, unfair, and other wrongful conduct

17

as herein alleged, said Defendants have violated Revised Code of Washington 19.86.093 by

18

consummating an unlawful, unfair, and fraudulent business practice, designed to deprive

19

Plaintiff of their home, equity, as well as their past and future investment.

20

122.

21

By reason of the foregoing, Plaintiffs have suffered and continues to suffer damages in

22

a sum which is, as yet unascertained.

23

24

WHEREFORE, Plaintiff prays for relief as set forth below.

25

PLAINTIFF'S ELEVENTH CLAIM FOR RELIEF
UNCONSCIONABILITY

26

36 – **SECOND AMENDED COMPLAINT** VIOLATION OF TILA;
RESPA; IMPROPER CHAIN OF TITLE; IMPROPER TRANSFER;
UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP)

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*

123.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

124.

If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.  In this case, we would ask the court to refuse to allow the Defendants to invoke the power of sale clause in the Deed of Trust because of the Claims alleged herein.

125.

When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

126.

Here, based on the deception, unfair bargaining position, lack of adherence to the Regulations, submitting a forged promissory note into evidence and contract fraudulent inducement and other laws that the Defendants were required to follow; coupled with the windfall that the Defendants reaped financially from their predatory practices and fraudulent practices upon Plaintiff, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect.

///

///

37 – **SECOND AMENDED COMPLAINT** VIOLATION OF TILA;
RESPA; IMPROPER CHAIN OF TITLE; IMPROPER TRANSFER;
UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP)

WHEREFORE, Plaintiff prays for restitution and relief as set forth below.

RIGHT TO AMEND

Plaintiff reserves the right to Amend this Complaint with new Claims and new Parties as is dictated by the evidence.

WHEREFORE, Plaintiff will ask for the following for each Claim for Relief sustained:

1. Plaintiff's Claims Invalidating the Sale Request the following Relief:
   i. For Declaratory Judgment voiding, invalidating and setting aside any attempt to initiate a foreclosure action; and
   ii. For Injunctive relief barring Defendants' from seeking the right to foreclose and otherwise seeking to dispossess Plaintiff of the property.
2. For Compensatory Damages in an amount to be determined by proof at trial.
3. For Special Damages in an amount to be determined by proof at trial.
4. For General Damages in an amount to be determined by proof at trial.
5. Awarding Plaintiff its reasonable Attorney Fees and Costs of this Action.
6. For a judgment either reforming or rescinding the Note and Deed of Trust and setting forth terms of restitution.
7. For any prejudgment or other interest according to law.
8. For whatever relief the Court deems just and equitable.

DATED Thursday, January 03, 2013.

THE COCHRAN LAW FIRM


By: /s/ John A. Cochran
    John A. Cochran, WSBA No. 38909
    Attorney for Plaintiff

38 – **SECOND AMENDED COMPLAINT** VIOLATION OF TILA; RESPA; IMPROPER CHAIN OF TITLE; IMPROPER TRANSFER; UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP)

*The Cochran Law Firm LLC*
*4400 NE 77th Ave., Ste. 275*
*Vancouver, WA 98662*
*Telephone (360) 721-4222 – Fax (360) 953-8083*